IN THE UNITED STATES DISTRICT COURT FOR THE

SOUTHERN DISTRICT OF NEW YORK

MANHATTEN DIVISION

WATCH TOWER BIBLE AND TRACT
SOCIETY OF PENNSYLVANIA,
    Plaintiff,

v.

THE TRUTH AND TRANSPARENCY
FOUNDATION, RYAN C. McKNIGHT,
and ETHAN G. DODGE, JANE/JOHN DOE,
    Defendants.

**CASE NO.** 1:20-cv-03366-MKV

### DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant *Jane / John Doe* (a pseudonym) files this motion to dismiss plaintiff's suit for lack of personal jurisdiction, as authorized by Federal Rule of Civil Procedure 12(b)(2). The forum state has no jurisdiction over these nonresident defendants.

This motion is based on the pleadings and papers on file in this case and the attached memorandum of points and authorities, exhibits, declarations, as well as arguments presented at a hearing.

Respectfully submitted,

/s/  Jane / John Doe

Defendant, pro se

1

TABLE OF CONTENTS

**TABLE OF CONTENTS** .................................................................................................. **2**

**INDEX OF AUTHORITIES** ............................................................................................ **3**

**A. INTRODUCTION** ........................................................................................................ **5**

**B. ARGUMENT & AUTHORITIES** ............................................................................... **9**

    NO PURPOSEFUL AVAILMENT ............................................................................... 15
    NO MINIMUM CONTACTS ........................................................................................ 16
    HARMING A COMPANY IN THE FORUM STATE DOES NOT CONSTITUTE
    'MINIMUM CONTACTS' FOR PERSONAL JURISDICTION ................................. 16
    NO FAIR PLAY ............................................................................................................ 18

**C. CONCLUSION** ........................................................................................................... **19**

**CERTIFICATE OF SERVICE** ....................................................................................... **20**

# **INDEX OF AUTHORITIES**

**Cases**

*Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014) .................................................................................................................. 16
*AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012) ............. 16
*Boag v. MacDougall*, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982) ..................... 9
*Burger King Corp. v Rudzewicz*, 471 US 462, 480 (1985) ........................................ 10, 12
*Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .......................... 9
*Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 754 (2014) ................................ 10
*Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 479-80 (4th Cir. 1993) 18
*Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ...................... 9
*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011) ................................................................................................. 14
*Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) ............................. 9
*Hanson v Denckla*, 357 US 235, 253 (1958) ................................................................... 12
*Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ................................................................................................. 10, 12
*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ................................................. 10
*International Shoe Co. v Washington*, 326 US 310, 316 (1945) ...................................... 11
*J. McIntyre Machinery, Ltd. v Nicastro*, 564 US 873, 888-889 (2011) ...................... 12, 16
*Keeton v Hustler Magazine, Inc.*, 465 US 770, 775 (1984) ......................................... 12, 17
*LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 214 (2000) .............................................. 11
*McDowell v. Delaware State Police*, 88 F.3d 188, 189 (3rd Cir. 1996) ............................ 9
*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443-44 (7th Cir. 2010) ................................................................................... 10
*Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012) .................... 16
*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) ........................... 10
*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) 18
*Poling v. K. Hovnanian Enterprises*, 99 F.Supp.2d 502, 506-07 (D.N.J. 2000) .............. 10
*Remick v. Manfredy*, 238 F.3d 248 (3rd Cir. 2001) ......................................................... 15
*S.E.C. v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992) ................................................... 10
*Shaffer v Heitner*, 433 US 186, 204 (1977) ..................................................................... 12
*Steinbuch v. Cutler*, 518 F.3d 580, 585-86 (8th Cir. 2008) .............................................. 16
*TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1292-93 (10th Cir. 2007) ....................................................................................................................... 18
*Then v. I.N.S.*, 58 F.Supp.2d 422, 429 (D.N.J. 1999) ......................................................... 9
*United States v. Day*, 969 F.2d 39, 42 (3rd Cir. 1992) ....................................................... 9
*United States v. Miller*, 197 F.3d 644, 648 (3rd Cir. 1999) ............................................. 10
*Walden v Fiore*, 571 US 277, 285 (2014) ........................................................................ 12
*World-Wide Volkswagen Corp. v Woodson*, 444 US 286, 295 (1980) ....................... 10, 12

**Statutes**

Copyright Act, 17 U.S.C. § 101 ........................................................................................... 5

**Rules**

Fed. R. Civ. P. 4(k)(1)(A) ................................................................................................... 11

## A. INTRODUCTION

> *Publicity is justly commended as a remedy for social and industrial diseases.  Sunlight is said to be the best of disinfectants; electric lights the most efficient policeman.*

*--- Louis Brandeis (1914), "What Publicity Can Do", in Other People's Money and How the Bankers Use It:*

1. Plaintiff is the Watch Tower Bible and Tract Society of Pennsylvania (i.e. the Jehovah's Witness).  While it is true that the Jehovah's Witnesses are well known for their distribution of Bible based books and publications, they are also a notorious group of criminal pedophiles running a scam "religion" who are guilty of abuse of process and emotional extortion through sham litigation in their pathetic efforts at discovering leaks and moles and whistleblowers.

2. In a blatant example of *Aggravated Butt-hurt*, plaintiff sued defendants for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 et seq. with regards to the online posting of whistleblower videos that expose the disgusting pedophilia and practices of this religious cult.

3. The Truth and Transparency Foundation, Ryan McKnight, Ethan Dodge, and *Jane / John Doe* are all nonresidents of New York and have had no purposeful contacts with New York.  Defendants are all either individuals or a 501(c)(3) nonprofit entity, none of which reside or do business in New York.

5

4. The case arises from an attempt by the Watch Tower pedophile cult and its lawyers to silence free speech and online criticism of plaintiff's organization and members (which are all pedophiles, seriously). I know that it does not matter at this stage of the proceedings, but their claims of copyright infringement are complete **BULLSHIT** (to use a legal term). Any use of the plaintiff's videos was purely fair use and for purposes of exposing these child sex predators and their equally offensive religious "practices" to the world at large. As such, they are the fair subject of criticism—even harsh criticism. This is just a SLAPP lawsuit, pure and simple.

5. *Jane / John Doe* would argue that the alleged copying of the whole videos is necessary for criticism, as ANY EDITING would be used by Watch Tower to claim the information was taken out of context, was edited in bad faith, etc. Furthermore, the use of the videos to expose the Jehovah's Witnesses is exactly opposite to the original intended use (which is to help bind followers and control the narrative). The posting of the videos on a whistle blower website is PER SE criticism. Reporting on and exposing to public comment and ridicule the doctrinal inconsistencies and reversals, failed predictions, mistranslation of the Bible, harsh treatment of former members and autocratic and coercive leadership (**not to mention the child raping!**) is a public duty that *Jane / John Doe* takes extremely seriously at great personal risk.[1]

---

[1] Former Governing Body member Raymond Franz has accused the movement's Governing Body of resenting, deprecating and seeking to silence alternative viewpoints within the organization and demanding organizational conformity that overrides personal conscience. He claimed the Watch Tower Society confirmed its position when, in a 1954 court case in Scotland, Watch Tower Society legal counsel Hayden C. Covington said of Jehovah's Witnesses: "We must have unity ... unity at all costs". He also stated that Witnesses are subject to a disciplinary system that encourages informants.

6.	Lastly, there is no commercial use of the videos by the Watch Tower pedophile religious cult; therefore, there is no "market." And no market means no usurpation.

7.	While not a member of this religious cult of rabid pedophiles and pedophile enablers, *Jane / John Doe's* daughter has been a baptized member for about 15 years and her husband is a born-in lifelong member who is a senior elder / overseer. The Watch Tower's DMCA cases against apostate infringers has risen swiftly since 2018, when numerous leaked videos and documents surfaced, leaving Watch Tower scratching their heads, wondering how sensitive information was escaping their global network of trusted Witness Elders, Ministerial Servants, Circuit Overseers and Branch Committee members. That date, not so coincidently, also coincides with the time period *Jane / John Doe's* daughter and son-in-law returned to the U.S. after living overseas several years in service to the Watch Tower after receiving indoctrination from the Watch Tower Bible School of Gilead; thus, the leaks began!

8.	Using this insider access, for more than two years, *Jane / John Doe* has been systematically leaking "stolen" internal documents and videos onto the World Wide Web in front of an audience of over 7.5 billion people using 100's of pseudonyms and throw-away social media accounts and emails. While some people might call it breaking & entering, theft of documents, and "doxing", I prefer to call it whistleblowing and exposing a gang of child sex abusers and their practices.

9.	Nobody is making any money off of this shit – after all, not even the cute Watch Tower girls that you always see hanging around bus stops and street corners engaging in flirty fishing can give this trash away for free! Once the effects from the

7

constant love bombing wear off, the vast majority of people simply walkaway never to return realizing what ridiculous nonsense this all is. Unfortunately, it really is true that there is a sucker born every minute. In this case, there are about 7 million suckers in the Watch Tower religious cult worldwide. While some of them are child sex abusers, the majority of this cult's members have no fucking clue as to what is actually going on behind the scenes all in the name of their twisted version of "God."

10. Which is where folks like the defendants come in: The documents that are supposedly "stolen" from the file cabinets and safes of countless local Kingdom Halls and Branch Offices are posted online, free of charge, on websites like FaithLeaks.org, AvoidJW.org, Doxbin and Reddit.[2] The same is true for the undercover videos that *Jane / John Doe* (using one pseudonym or another) continually posts online on the YouTubes, Facebooks and the Twitter. All is given freely, without charge. No one, not the Watch Tower nor *Jane / John Doe*, is making any money from this stuff (which is a factor for the Court to consider in an alleged copyright infringement case, right?) All of the videos at issue here is stuff that is produced freely by the Watch Tower using an army of *discrete slave* laborers. All of which is then shown / given away freely by the Watch Tower either online at JW.org or at their local Kingdom Halls and at their public assemblies and conventions.

---

[2] Many documents and videos have also been delivered to Daniel Dye of the PA Attorney General's office for use in his grand jury investigation. Unfortunately for Watch Tower attorneys Paul Polidoro and Philip Brumley, the Private Search doctrine is an exception to the Exclusionary Rule under Pennsylvania law (see *Commonwealth v. Shaffer*, 209 A.3d 957 (Pa. 2019)); thus, they can bitch and moan as much as they want to about the use and admission of documents obtained by an illegal search conducted by non-governmental actors like *Jane / John Doe*, their objections will fall on deaf ears – these two assholes are going to be in handcuffs in the not to distant future, mark my words! **So suck it.**

8

11.     It is important for the Court to know that the Jehovah's Witnesses have thrived on controlling their own narrative for many years, discouraging outside research and discussion.  By making these documents and videos publicly available, opportunity is given for open and unbiased discussion and criticism.  This can be evidenced by the ***tens of thousands*** of comments posted on the whistleblower related websites and social media pages and by the fact that ***hundreds of thousands*** of people all across the planet posted links to these very videos at issue here on their own social media pages!




## B. ARGUMENT & AUTHORITIES

12.     *Jane / John Doe* respectfully reminds the Court that *pro se* litigants' submissions are to be construed liberally and held to less stringent standards than submissions of lawyers.  If the Court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements. *Boag v. MacDougall*, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); *Estelle v. Gamble*, 429

9

U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *McDowell v. Delaware State Police*, 88 F.3d 188, 189 (3rd Cir. 1996); *United States v. Day*, 969 F.2d 39, 42 (3rd Cir. 1992) (holding pro se petition cannot be held to same standard as pleadings drafted by attorneys); *Then v. I.N.S.*, 58 F.Supp.2d 422, 429 (D.N.J. 1999).

13. The courts provide pro se parties wide latitude when construing their pleadings and papers. When interpreting pro se papers, the Court should use common sense to determine what relief the party desires. *S.E.C. v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992). See also, *United States v. Miller*, 197 F.3d 644, 648 (3rd Cir. 1999) (Court has special obligation to construe pro se litigants' pleadings liberally); *Poling v. K. Hovnanian Enterprises*, 99 F.Supp.2d 502, 506-07 (D.N.J. 2000).

14. Federal courts do not have jurisdiction over a nonresident defendant unless the nonresident defendant has purposefully established "minimum contacts" with the forum state and the exercise of jurisdiction comports with "fair play and substantial justice." *Daimler AG v. Bauman*, 571 U.S. 117, 134 S. Ct. 746, 754 (2014); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443-44 (7th Cir. 2010).

15. Personal jurisdiction comes in two varieties: general and specific. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General personal jurisdiction requires that the defendant in question has had "continuous and systematic"

10

contacts with the forum state. *Id*. Specific personal jurisdiction depends upon satisfying a three-part inquiry. *Id*. First, the defendant must have "purposefully directed [its] activities" at the forum state. *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Second, the litigation must "arise out of or relate to at least one of those activities." Id. (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)) (internal quotation marks omitted). Third and last, if the first two steps of the inquiry have been met, the court must consider whether the exercise of personal jurisdiction "comport[s] with fair play and substantial justice." *Id*. (quoting *Burger King*, 471 U.S. at 476, 105 S.Ct. 2174) (alteration in original) (internal quotation marks omitted).

16. The Court must evaluate whether it has personal jurisdiction over the defendants by looking at whether they are "subject to the jurisdiction of a court of general jurisdiction in the state" where the Court is located, i.e. in New York. Fed. R. Civ. P. 4(k)(1)(A). Because all of the defendants here are nonresidents, the exercise of personal jurisdiction over them must be authorized under the state's long-arm statute and must satisfy the due process clause of the United States Constitution. "When the defense is timely asserted, a New York court may not exercise personal jurisdiction over a non-domiciliary unless two requirements are satisfied: the action is permissible under the long-arm statute (CPLR 302) and the exercise of jurisdiction comports with due process. See *LaMarca v Pak-Mor Mfg. Co.*, 95 NY2d 210, 214 (2000).

17. If either the statutory or constitutional prerequisite is lacking, the action may not proceed. Due process requires that a nondomiciliary have "certain minimum contacts" with the forum and "that the maintenance of the suit does not offend traditional notions of

11

fair play and substantial justice". *International Shoe Co. v Washington*, 326 US 310, 316 (1945) [internal quotation marks and citations omitted]. Thus, this constitutional mandate likewise encompasses two requirements and jurisdiction may not be exercised unless both are present.

18. With respect to due process, "[a] non-domiciliary tortfeasor has minimum contacts with the forum State . . . if it purposefully avails itself of the privilege of conducting activities within the forum State". *LaMarca*, 95 NY2d at 216 [internal quotations marks and citations omitted]),"thus invoking the benefits and protections of [the forum state's] laws". *Hanson v Denckla*, 357 US 235, 253 (1958). This test envisions something more than the "fortuitous circumstance" that a product sold in another state later makes its way into the forum jurisdiction through no marketing or other effort of defendant. *World-Wide Volkswagen Corp. v Woodson*, 444 US 286, 295 (1980); *see J. McIntyre Machinery, Ltd. v Nicastro*, 564 US 873, 888-889 (2011) [Breyer, J., concurring]). Put another way, "the mere likelihood that a product will find its way into the forum" cannot establish the requisite connection between defendant and the forum "such that [defendant] should reasonably anticipate being haled into court there". *World-Wide Volkswagen*, 444 US at 297.

19. The constitutional inquiry "focuses on the relationship among the defendant, the forum, and the litigation'". *Keeton v Hustler Magazine, Inc.*, 465 US 770, 775 (1984), quoting *Shaffer v Heitner*, 433 US 186, 204 (1977). Significantly, "it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction". *Walden v Fiore*, 571 US 277, 285 (2014). Thus, the United States Supreme Court has "upheld the assertion of jurisdiction over defendants who have

purposefully reach[ed] out beyond' their State and into another". *Walden*, 571 at 285; see e.g. *Burger King Corp. v Rudzewicz*, 471 US 462, 480 (1985), while clarifying that the relationship between defendant and the forum state must arise out of defendant's own contacts with the forum and not "contacts between the plaintiff (or third parties) and the forum State". *Walden*, 571 at 284, citing *Helicopteros Nacionales de Colombia, S. A. v Hall*, 466 US 408, 417 (1984); *Hanson*, 357 US at 253-254; *World-Wide Volkswagen*, 444 US at 298).

20. In Walden, the United States Supreme Court held that jurisdiction was not properly exercised where a defendant committed allegedly tortious conduct in Georgia against Nevada residents, despite knowing that the conduct would continue to affect them after their return to Nevada. The Supreme Court explained that, "when viewed through the proper lens—whether the defendant's actions connect him to the forum—[defendant] formed no jurisdictionally relevant contacts with Nevada," because the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada". *Walden*, 571 US at 289 [emphasis omitted]). Ultimately, "[d]ue process requires that a defendant be haled into court in a forum State based on [defendant's] own affiliation with the State, not based on the random, fortuitous, or attenuated' contacts [defendant] makes by interacting with other persons affiliated with the State". *Walden*, 571 US at 286, quoting *Burger King*, 471 US at 475; see Siegel, NY Prac § 88 [6th ed] [observing that the Supreme Court has "tighten[ed] . . . the reins on the application of longarm jurisdiction"].

21.     Here, the complaint alleges that the defendants are all citizens of Nevada and Utah, and has caused harm to plaintiff. The Watch Tower pedophile gang has not asserted any facts supporting the existence of general jurisdiction in the Southern District of New York. Therefore, the court should analyze whether specific jurisdiction exists over defendants in this court.

22.     Specific jurisdiction allows a defendant to be sued in the forum state only where the issues of the suit derive from or are connected to the contacts that establish jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011). The existence of specific jurisdiction is determined by looking at the relationship among the defendant, the forum, and the litigation. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984). For a court to exercise specific jurisdiction that is consistent with constitutional due process, the defendant's "suit-related conduct must create a substantial connection with the forum state." *Walden v. Fiore*, 571 U.S. 277, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014).

23.     In the case at hand, according to the Watch Tower and their attorneys (Kieran G. Doyle, a pedophile, and Thomas Kjellberg, who might be a pedophile), they state in their Complaint that:

> This Court has personal jurisdiction over Defendants because, on information and belief, Defendants, in person or through an agent,
>
> (a) have transacted business, and have offered to supply goods, in New York, including through their interactive website located at *truthandtransparency.org*, on which merchandise is offered for sale to, and donations solicited from, New York residents; and/or
>
> (b) have committed tortious acts both within and outside New York, causing injury to Watch Tower in New York.

14

See Complaint at ¶11 (Doc #1).

24. The problem with their legal theory on jurisdiction and venue, your honor, is that it is complete and total **BULLSHIT** having been specifically rejected in this Circuit nearly 20 years ago!!!

25. Specifically, "A person's act of placing information on the Internet" is not sufficient by itself to "subject that person to personal jurisdiction in each State in which the information is accessed." See *Remick v. Manfredy*, 238 F.3d 248 (3rd Cir. 2001).

## I. No Purposeful Availment

26. The purposeful availment requirement is considered the most important requirement. The defendant must have purposefully availed himself of the "privilege of acting in the forum state or causing a consequence in the forum state." Requiring that the defendant take purposeful steps in the forum state ensures that a defendant's "random, fortuitous, or attenuated" contacts with the forum state will not subject it to being haled into court there. *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Additionally, the defendant's relationship with the forum state must arise out of the contacts that the defendant itself created with the forum state. *Id.* The unilateral activity of the plaintiff or a third party cannot be the basis of exercising personal jurisdiction over the defendant. *Id.* Although not decisive, the plaintiff or third party's contacts with the forum state may be significant or important to the due process analysis because the defendant's contacts with the forum state may be intertwined with the transactions with the plaintiff or third party. *Walden*, 134 S.Ct. at 1122.

**NO MINIMUM CONTACTS**

27. Under minimum-contacts analysis, a court must determine whether the nonresident defendant has purposefully availed itself of the benefits and protections of the forum state by conducting activities within the forum state. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 2787-88 (2011) (plurality op.); *Steinbuch v. Cutler*, 518 F.3d 580, 585-86 (8th Cir. 2008). In measuring minimum contacts, a court should consider the following: (1) the nature and quality of the contacts with the forum state, (2) the quantity of the contacts, (3) the relation of the claim to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Steinbuch*, 518 F.3d at 586. Minimum contacts are not established unless a court finds it has either specific or general jurisdiction over the defendant. *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012); *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1360 (Fed. Cir. 2012). In the case at hand, the only contacts between plaintiffs and defendant *Jane / John Doe* (assuming the allegations in the petition as true, which defendant contends are not), took place on the internet on computer servers that might or might not physically exist in New York.

**HARMING A COMPANY IN THE FORUM STATE DOES NOT CONSTITUTE 'MINIMUM CONTACTS' FOR PERSONAL JURISDICTION**

28. Since the Supreme Court's recent decision in *Walden v. Fiore* "there can be no doubt that 'the plaintiff cannot be the only link between the defendant and the forum' … [a]ny decision that implies otherwise can no longer be considered authoritative." As a

result, federal courts are dismissing lawsuits for lack of personal jurisdiction on factual and legal grounds identical to those plaintiff assert against the defendants.

29. In *Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), the Seventh Circuit held alleged commercial torts and violations of the *Lanham Act* directed against the Indiana plaintiff were insufficient contacts with Indiana to confer specific personal jurisdiction over the defendants.

30. The *Advanced Tactical* court rejected as insufficient minimum contacts *Real Action's* e-mail and interactive website. In analyzing *Real Action's* online activities for the minimum contacts analysis, the court questioned how *Real Action* had "purposefully exploited" the Indiana market. It held that:

   • Maintaining and utilizing an e-mail list of past customers does not show a relationship between Real Action and Indiana.

   • Operation of an interactive website does not show that a defendant has formed a contact with the forum state.

   • Any interactivity in this case had no effect on the alleged trademark infringement.

In so holding, the Seventh Circuit explained that e-mail "does not exist in any location at all" and any connection that it may make with a recipient's in-state location is "entirely fortuitous." Further, the court minimized the role that a website's interactivity may play a role in the personal jurisdiction analysis. *Advanced Tactical*, 751 F.3d at 801.

31. According to the Supreme Court's holding in *Walden*, the relevant contacts are those that center on the relations among the defendant, the forum, and the litigation. *Id.* (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). Crucially, not just any

17

contacts will do: "For a State to exercise jurisdiction consistent with due process, the defendant's **_suit-related_** conduct must create a substantial connection with the forum State." *Id.* at 1121 (emphasis added). The "mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.* at 1126. Furthermore, the relation between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum … ." *Id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475 ). Contacts between the plaintiff or other third parties and the forum do not satisfy this requirement. *Id.*; see *Walden,* 134 S. Ct. at 1122.

### NO FAIR PLAY

32. If the court finds sufficient minimum contacts, it may consider the second prong of the *International Shoe* test and ask "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998).

33. In the case at hand, this Court's assumption of jurisdiction over defendants and their property would offend traditional notions of fair play and substantial justice and would be inconsistent with the constitutional requirements of due process. *See Int'l Shoe*, 326 U.S. at 316. The Court should decline to exercise jurisdiction over defendant for the following reasons:

   a. The Court's assumption of jurisdiction over defendant and his property would place an extraordinary burden on defendant. *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 479-80 (4th Cir. 1993); *see TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1292-93 (10th Cir. 2007). None of the records, files, or witnesses that would be favorable to Jane / John Doe are located in the forum state. Defendant is of very limited financial means who would have no ability to subpoena

18

        witnesses or items favorable to him in the forum state.  He would also have no ability to attend or participate in any hearings or the trial.  On the other hand, plaintiffs are a very large and wealthy company that claims earnings of over $20,000 per month from its revenge porn and other business activities.  The economic disparity between the two parties is substantial.

    b.    The Court's assumption of jurisdiction over defendant and his property would serve no interest of the forum state.  *Ellicott Mach. Corp.*, 995 F.2d at 479-80; *see TH Agric. & Nutrition, LLC*, 488 F.3d at 1293-94.  Both plaintiffs and all of the defendants are nonresidents.

    c.    The Court's assumption of jurisdiction over defendant and his property would allow plaintiffs to prosecute their suit in the forum state even though they could obtain convenient and effective relief in federal court in the proper forum. *TH Agric. & Nutrition, LLC*, 488 F.3d at 1294; *Ellicott Mach. Corp.*, 995 F.2d at 479-80.

## C. CONCLUSION

34.  Defendants has had no minimum contacts with New York.  Furthermore, the Court's assumption of jurisdiction over defendants would offend traditional notions of fair play and substantial justice and would be inconsistent with due process of law.  For these reasons, defendants asks the Court to dismiss all of plaintiff's claims.

Respectfully submitted,

/s/  Jane / John Doe

Defendant, pro se

Email:  JWHater@protonmail.com

## **CERTIFICATE OF SERVICE**

I certify that on May 3, 2020, a copy of this document was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for plaintiff Watch Tower:

COWAN, LIEBOWITZ & LATMAN, P.C., 114 West 47th Street, New York, NY 10036-1525, Ph# (212)790-9200, Kieran G. Doyle (kgd@cll.com) and Thomas Kjellberg (txk@cll.com).

/s/ Jane / John Doe
Jane / John Doe

Defendant, pro se